All right, let's pick up our next case, People v. Jacob Austin. May it please the Court. Good afternoon, Your Honors. Counsel, my name is Chris Bennett from the Office of the State Appellate Defender, and I represent Jacob Austin, the appellant. With this Court's permission, my plan is to focus on the third and fourth issues from the briefs, discussing the trial court's rulings on the in-camera hearing requests, and the questioning of the doctor who examined M.W. The jury deliberated Jacob Austin's fate for five hours before it sent out a note stating that it could not reach the unanimous verdict. After being told to keep deliberating, the jury spent another five hours considering the evidence, before finding Jacob not guilty of one gun but guilty of two others. But the jury did not know, while it deliberated for nearly half a day, that it had been prevented from hearing vital testimony explaining the physical evidence and further undermining the shaken credibility of M.W. In this closely balanced case, and absent the evidence being considered by the jury, this Court can have no confidence in the jury's verdict. Starting with the trial court's ruling as to the in-camera review of the L.F. case, the State filed a pretrial motion seeking to bar the defense from inquiring into M.W.'s sexual history. Part of this history pertained to a 2009 case where M.W. had been abused by L.F., a juvenile. Due to that case's confidential nature, the State would not reveal to Jacob the specifics of the case, nor to the Court. While the prosecutor generally said the facts of the case were dissimilar to the facts of this case, Jacob proffered in an affidavit that M.W. had told him that she had not told the authorities of all that occurred between her and L.F. The defense repeatedly asked the trial court for an in-camera review of the L.F. case file and M.W. herself to determine whether the facts of that case were similar enough to warrant questioning about it at trial. Despite the defense requests, the trial court advocated its duty under the federal and state case law to perform an in-camera review of the L.F. case and M.W. as to the facts of that case. In order to present a full and robust defense, Jacob was entitled to have the L.F. case examined by the trial court to determine whether there was relevant information or not about it regarding M.W.'s prior history to explain both the physical evidence, her sexual knowledge, and to potentially impeach her about a statement she made during a videotaped police interview. On appeal, the state's argument focusing on the prosecutor's representation of the facts of the L.F. case only highlights the trial court's error here. It is not the prosecutor who is the gatekeeper for such evidence. It is the trial court who, after considering such evidence in camera, is to determine whether it is relevant and admissible. The L.F. case was not the only instance where the trial court prevented the jury from hearing evidence or an internal alternative explanation for M.W.'s physical condition. After the state's motion eliminating to bar the defense from going into M.W.'s history was granted, the state then disclosed a report from Dr. Kathy Swarford, who had examined M.W. ten days after the allegations came to light. At trial, the state asked Dr. Swarford whether M.W.'s physical condition would be consistent with someone with no prior sexual history, and Dr. Swarford confirmed M.W.'s condition was not consistent with that. As a result of this question and answer, the defense asked to revisit the trial court's prior rape-assault ruling and allow cross-examination of Dr. Swarford, but portions of her examination report that would have provided an alternative explanation for M.W.'s physical condition other than the alleged contact between Jacob and M.W. Preventing the jury from hearing this crucial evidence, the trial court denied the defense's request to cross-examine Dr. Swarford about the report, and further, didn't strike the state's question nor Dr. Swarford's answer as to M.W.'s physical condition. On appeal, the state claims Swarford's report does not provide an alternative explanation for M.W.'s condition. This court has the report in its possession now. It's a supplemental volume. I don't know whether, since it's under seal, whether you would allow us to go into the details of it or not. Is that allowable, Your Honors, to mention the report? We'll have to determine that. Okay. Even if there is no ambiguity in the report, if there is ambiguity, which we do not see, this only highlights why the trial court erred in not allowing questioning on the subject, as such questioning could have clarified it for both the trial court, the jury, and further, this court on review. The state's second argument is that even if the report contains an admission by M.W., it would not be relevant in pro bono. People v. Anthony Roy W., a case the state did not even address in its briefing, holds that such evidence would have been highly irrelevant in a matter where it could have explained the physical evidence. Prior history is admissible where, quote, that history explains some physical evidence, such as semen, pregnancy, or physical indications of intercourse. That's from People v. Sandoval, 135 L. 2nd at 187. The rape show cannot be turned on its head and maybe be a sword to thwart the defendant's right to confrontation and to present his theory of the case. This confrontation clause here was further compounded by the prosecutor telling the jury in closing argument, quote, so to believe this defendant, you have to disbelieve the medical evidence. You would have to think M.W. shoved something up her vagina and caused these injuries in this heel trauma or something else caused it, which there was no evidence whatsoever. Absent the jury hearing the salient evidence from Dr. Swofford about the physical condition M.W. had reported, this court can have no confidence in the outcome that occurred below. Turning back to another instance where the trial court failed to conduct in-camera hearing, pretrial defendant filed a bill of particulars trying to narrow down the time period when the alleged conduct occurred. The state said that in interviews with M.W., it can only narrow down that period to March to May of 2012. Well, during her trial testimony, M.W. alleged some sexual conduct between Jacob and her during the fall of 2011, well outside of the originally disclosed period. As a result of this testimony, the defense asked the trial court to review in-camera the prosecutor's notes to determine whether the prosecutors were on notice of this prior conduct. During the hearing of this request, the prosecutor repeatedly conceded that she had made notes, still had them in her possession, but that they were a work product and not discoverable. Without conducting an in-camera review of these notes, the trial court accepted the prosecutor's representation that they were a work product. Under People v. Sazbo, an Illinois Supreme Court case, that court found a trial court must conduct an in-camera review when the prosecution's interview notes are potentially discoverable in this instance. An in-camera review helps establish the contents of the state's file and also provides for this court the ability to review any contested discovery questions. The error in this case was not harmless, where M.W. was the key witness at this trial. Your Honors have no further questions. The jury in this case spent 10 hours deliberating the closely balanced evidence. What it did not know, and what the trial court prevented from knowing, was that there existed potentially several other explanations for the physical evidence and powerful additional impeachment of M.W. This court should have no confidence in the outcome that occurred at trial. We ask for the relief requested in the brief, and we rest on the other arguments as to the other issue to be argued, and reserve the remainder of our time for comments. Thank you, Counselor. Thank you, Your Honor. Arguments for the State. Good afternoon, Your Honor. May it please the Court? Counsel? It's Patrick Daly from the State. Your Honor, you're probably aware my name is not Whitney Atkins, so I'm studying for her. Our issue is an outlet for Breeder Pastures, the city of Chicago. I have, however, reviewed the brief, so I've had a chance to review the record as well, so I have at least some passing knowledge of certain facts. The three issues that were addressed here today all deal with essentially in-camera review. As a predicate to that, I will say that I'm in the core of the counsel that if this court ultimately decides in the defendant's favor, then all the issues of the appropriate remedy would be to essentially remand for a retrospective in-camera review to determine applicability of the evidence and not reverse the defendant's conviction. That would be an instance for the court to determine once it does the in-camera review if there's no relevant material, and then there's really no harm or foul here in that case. So I do appreciate counsel's argument in that regard. Working backwards a little bit, talk about the counsel's, prosecutor's interview notes. My understanding of it as I look at the exchange between the court, defense counsel, and the prosecutor, it does not appear that Ms. Walker, the assistant state's attorney, actually generated any written notes. Now, my understanding of the law as it relates to discovery and as it relates to material that has to be generated in the course of both prosecutorial interviews and witnesses that discovery relates to disclosure of evidence or material that is reduced to writing. It doesn't appear that anything is reduced to writing in this case. There's no reason to discount the prosecutor's representation. She was an officer of the court and repeatedly insisted that she had not generated any notes in the court except for that proposition. So I think in that regard, the court did not burn her. With regards to the examination of the victim by Dr. Swofford, this is a very kind of interesting situation. Again, I'm kind of coming to this a little bit after the fact. There appears to have been a report or a physician's diagnostic report that was generated. It may have been talked about, it may have been discussed, and I think counsel makes reference to it in the footnote in the brief that he had in his possession but was not supplemented to the record at that time due to the sensitive nature of the content. It was never admitted into evidence. The state filed a motion to supplement. Apparently, that was granted. So it's sort of a new territory for me where evidence is not admitted to trial and not supplemented to the record on appeal. It is what it is. This court has it, in my understanding, from Justice Goldberg. She probably don't want us to get into the details of it. I think that given the posture of this case, what's really happening here, then, is this court has kind of stepped into the shoes of the circuit court in doing an in-camera review of the documented material because presumably this is the exact same thing that the court would have been considering had the court, you know, heeded the request to do an in-camera examination of it. So I think, obviously, the existence of the error or not existence of the error is going to rise and fall. Obviously, I don't know if this court is going to see in that report. I won't see any more than I don't think there's error. But beyond that, this court has it. I'm not going to get into details of it one way or the other, much as counsel did graciously. So I think that's all there is to say on that with regards to the report. I will add, actually, in addition to that, that there is, I think, merit to the argument that when we talk about actually what the findings were, they related to blunt force trauma. It was not blunt force trauma necessarily specific to a particular evidence for existence of abuse. It was consistent with but also allowed for the fact that it could have been caused by any number of different ways that may have been unrelated necessarily to penile penetration. So I think that when we talk about its relevancy, even if you did an in-camera review, I'm not sure how that necessarily relates to the particular findings as a way of providing an alternative explanation because the explanation, an alternative explanation to, shall we say, abuse because abuse really wasn't the gravamen of the finding. It was a corollary to it, but you'll see that. And then I think the testimony is consistent with the fact that the doctor's testimony was essentially kind of a superficial physical examination showing a particular set of physical characteristics which could be caused by any number of factors. So I think that when you start looking at whether this should be an in-camera review to reveal certain information, the court also has to be attentive to the type of evidence and the degree of attenuation of the evidence sought to be omitted from what was being presented. Excuse me. If there's a diagnostic report subsequent to a physical examination of whatever death, why wouldn't that be relevant? Well, I suppose you would probably, well, that's a good point, John, and I think it would have to come down to, I think, the report and its relationship to the diagnosis that the doctor was providing. Let's say that the diagnosis here, maybe change the facts a little bit. Let's say the diagnosis here or the physical examination was completely congruent with penis-to-vagina sexual intercourse, high military, et cetera. I mean, there's certain things that we've seen over the course of cases that are sort of characteristic to that type of sexual assault. Then the report's relevancy, obviously, is proportionally heightened because if there is an indicia as a defendant appears to be seeking that there was prior sexual conduct which would have caused a direct physical relationship to the specific findings of the physician, then that's where the doctor's actual findings sort of establishes the threshold for assessing the probative value of looking at the report. You know, if we operate here on the assumption, let's say, that the report says exactly what the defendant thinks it says, you know, for the sake of argument, the defendant composes what it might say or what it does say, it doesn't really advance anything necessarily with regards to the physical findings because they're neither consistent or inconsistent with the idea that there is, you know, blunt force trauma, which again, the doctor said could be caused by any number of things. So, you know, it's that balancing test that courts have to engage in when we talk about, you know, privacy interests versus relevancy versus the defendant's constitutional right to present a fair defense. And that's sort of what's happening here. And again, I think that this argument is largely secondary to the first one. So I don't want to get the court off on too distant of a track. This court has the report. So I think that when the court looks at the report, it'll have probably a better factual basis to really kind of assign the propriety of the court's ruling below. And I think that would emphasize that, that it is before the court. I do think that the defendant's first argument is probably the most interesting one. To me, it's always a struggle, I think, for courts below, reviewing courts, to strike that balance of the defendant's right to present a defense versus the rights that are protected in the interest in the rape shield laws. And the court in this case, I think, engaged in its best efforts to ensure that that right was being properly balanced. And, of course, again, this court's standard review is whether the court abuses discretion. The defense counsel, I think, states, and then there's a certain lease logic to it, that, well, the prosecutor is not the gatekeeper for determining what is or isn't relevant. And I think that that argument sort of stems from the notion that the argument made below was that the type of sexual abuse that occurred in this LF case is factually dissimilar to the sexual assault that occurred in this case. And that was the prosecutor's representation. From best as I could tell, that was accepted by the circuit court. And, you know, I guess as the proponent of the motion, the defendant being the proponent of the motion and the proponent of asking the court to essentially overcome the rape shield protection, that's going to require a lot more than, I don't think she's telling the truth, or I think there's more to it than this, so let's have a fishing expedition on an in-camera review and figure out what it is. I mean, I think the law is clear that you have to at least establish a threshold of relevancy to what the proposed evidence is going to be, and then let the court make that determination independently once it's been made aware of exactly what it is the defendant is seeking there. My review of the record and my review of the arguments, I'm sort of struck by what appears to me essentially, well, there was a prior sexual conduct that occurred, and it involves minor, and she made some effect that, you know, a lot more happened than what she let on. But we're dealing with a very broad and distinct set of factual circumstances that the court can exercise its discretion to say, well, that's fine, and I think you should get to the next step. So I guess the early argument is that when a court exercises its discretion, it has a certain – if I could finish this discussion real quickly. Sure. It has to exercise that discretion within the parameters of the motion and the contents of the motion and the scope and support of the motion that is being presented. So if you have no further questions, Your Honor, I appreciate it. Thank you. Thank you, counsel. Lee Bonner. Just briefly, Your Honors, to clarify the relief requested, while for the in-camera review issues, the two ones regarding Issue 3 of the brief, is first an in-camera review and then potentially a new trial, depending on what evidence is discovered there. Regarding the confrontation clause, Issue 4 of the briefs, that is simply a new trial. That does not need to go back for an in-camera review. We have all the evidence in the record for that. As to counsel's representation as to A.S.A. Walker not making any notes, that is simply not true. Citation 499 to 500, A.S.A. Walker clearly states, quote, I have my handwritten notes and I can't lay my hands on them right now. I can look in the box, you know, I don't know if I have them with me or not. I made some notes. I certainly made some notes. It's clear she made notes. All she did was argue that they were non-discoverable. That's not her decision. It's the trial court's decision once an in-camera review is done. People B. Sazbo makes that clear. Regarding the medical reports, Counsel, was that during the course of the trial that the Assistant State's Attorney made those statements? She made those statements once the defense counsel had asked for this in-camera review of the note. She made those statements, yes. Once M.W. had testified to conduct that outside of the prior alleged period of May or March to May of 2012. And did she make other statements that she did not have any notes? At the end of her explanation is that my interpretation of how she explains that they were not discoverable is what her argument was. But she repeatedly stated in that same hearing that she made notes in her interviews with M.W. And her ground in mind, her argument was these are not discoverable. They were private. In regards to the medical reports, the only explanation in front of the jury for what Dr. Swarfer confirmed was that her physical condition was consistent with having penis to vagina sex before was that some alleged conduct between Jacob and M.W. And that is why it was so crucial for this cross-examination to have occurred of Dr. Swarfer because it would have put another alternative explanation for the physical evidence. As you'll see when you look at the supplemental volume of the reports on page 5, it's clearly indicated regarding her past consensual history. In regards to the standard review for the in-camera review, as we've laid out in the briefs, it is a de novo review, not an abuse of discretion in this instance where the court refuses to even do an in-camera review. An abuse of discretion is when it does an in-camera review and then does not decide with the defendant. That would be an abuse of discretion. In regards to the LF case, the state's the one that prevented anyone from learning about the specifics of the case. She would not go into it on the record. That's why it was so crucial to have an in-camera review. It was for both the trial court to know about it, for us to know about it on review, but now we're just left guessing as to what the specifics of this LF case were or M.W.'s version of it. This court has no further questions. Thank you, counsel. We rest on the rein of our argument and ask for a leaf of question in the briefs. Thank you. Thanks to both of you for your arguments. We'll take this case under advisement and issue a written decision.